# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RITU JUTLA, individually and on behalf of all others similarly situated;<br><br>                      Plaintiff,<br><br>      v.<br><br>FYRE MEDIA, INC., a Delaware corporation; BILLY MCFARLAND, an individual; JEFFREY ATKINS p/k/a/ JA RULE, an individual; and DOES 1 through 50, inclusive;<br><br>                      Defendants. | Case No. 1:17-cv-03541<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ritu Jutla, on behalf of herself and all others similarly situated, by her undersigned counsel ("Plaintiff"), for this class action Complaint against Defendants, Billy McFarland, Jeffrey Atkins, and Fyre Media, Inc., and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities (collectively, "Defendants"), allege as follows:

## I. INTRODUCTION

1. Defendants' Fyre Festival was an ill-conceived and poorly planned disaster from the get-go. Defendants only first imagined the Festival in December 2016 – a mere four months before the event was scheduled to take place – and Defendants only began actual planning for the event little more than one month before thousands of attendees were scheduled to arrive.

2. The Fyre Festival was not just any music festival – it was billed as a luxury music festival available only to the wealthy elite, individuals willing to pay from $1,200 to $100,000 per ticket. Defendants heavily promoted and marketed the Festival to generate massive ticket sales; yet, Defendants knowingly misrepresented the Festival's accommodations and the safety.

3. Defendants promised that the Fyre Festival would include: travel on a "VIP configured Boeing 737," a "globally rooted" and "curated" dining experience, a "mixology team" running multiple bars continuously throughout the day, cabana packages, jet skiing, snorkeling, catamaran parties, lavish and fully furnished sleeping accommodations, and musical performances by top-level musical talent.

4. Yet, when Plaintiff and over a thousand other event attendees arrived at the island on the first day of the festival, the surroundings were anything but luxury.

Plaintiff's accommodations were little more than a FEMA-style tent lined up with hundreds of others on the beach, barely standing up against the wind and rain. And because Defendants had promoted the Fyre Festival as a "cashless" event, Plaintiff was at the mercy of the disorganized and poorly-informed event staff to provide her basic needs and implement an evacuation plan.

5. Needless to say, the hashtag "#fyrefraud" quickly appeared on social media for patrons to share their outrage while in Defendants' care.

6. Defendants cancelled the Fyre Festival on its first day – citing inclement weather – but Defendants knew long before that day that the venue was woefully underequipped to handle the sheer number of attendees, and that the circumstances posed serious health and safety risks to those in attendance. Defendants warned celebrities and performers well in advance that they should not attend. But Defendants did not extend the same warning to Plaintiff.

7. Instead, Plaintiff and over a thousand other attendees were stranded on an island with inadequate shelter from wind and rain, and no access to medical staff. Without guidance or information from Defendants, chaos and panic ensued.

## II.    PARTIES

8. Plaintiff Ritu Jutla is and, at all times relevant to this action, was a resident of New York, New York.

9. Defendant Fyre Media, Inc. is and, at all times relevant to this action, was a business entity incorporated under the laws of the State of Delaware with its corporate office and principal place of business at 52 Lispenard Street, TH1, New York, NY 10013. Fyre Media books talent, sells tickets, and promotes and hosts events across the United

States (and the Globe), including in the State of New York.

10. Upon information and belief, Defendant Billy McFarland is and, at all times relevant to this action, was a resident of the State of New York.

11. Upon information and belief, Defendant Jeffrey Atkins p/k/a Ja Rule is and, at all times relevant to this action, was a resident of the State of New York.

12. Upon information and belief, Defendants promoted the Fyre Festival and sold Fyre Festival tickets and ticket packages to residents and citizens of numerous States and Countries.

### III. JURISDICTION AND VENUE

13. Subject Matter Jurisdiction. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) in that: (1) this is a class action involving more than one thousand (1000) class members; (2) various members of the proposed class are citizens of a state other than New York where Defendants are citizens; and (3) the amount in controversy exceeds the aggregate sum of $5,000,000, exclusive of interest and costs.

14. Personal Jurisdiction. This Court has personal jurisdiction over Defendants because Defendants do business in and throughout the State of New York through the promotion, sale, marketing, and distribution of their products, and a substantial part of the wrongful acts alleged in this Complaint were committed in New York, among other venues.

15. Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to Plaintiff's claims occurred in the Southern District of New York; Defendants are authorized to conduct business in this

district and have intentionally availed themselves of the laws of this District; Defendants currently conduct business in the Southern District of New York; and, Defendants are subject to personal jurisdiction in this District.

### IV.     FACTUAL ALLEGATIONS

16.     In 2016, Defendants began promoting the Fyre Festival – an event conceived by McFarland and Atkins after development of "a partnership over mutual interest in technology, the ocean, and rap music." Defendants billed the Fyre Festival as an exclusive – and incredibly expensive – concert experience open only to the wealthy elite capable of paying between $1,200 and $100,000 per ticket or package.

17.     Defendants described the Fyre Festival as "the cultural experience of the decade" beginning with travel to the island of Exuma from Miami, Florida, on a private "VIP configured Boeing 737." Defendants promised the experience of a lifetime, including a "globally rooted" and "curated" dining experience, a "mixology team" running multiple bars continuously throughout the day, cabana packages, jet skiing, snorkeling, catamaran parties, lavish and fully furnished sleeping accommodations, topped off with musical performances by top-level musical talent.

18.     Defendants expended tremendous time and money promoting the Fyre Festival. On information and belief, McFarland spent as much as $250,000 on a single Instagram post from Kendall Jenner to promote the event. And McFarland spent as much as $20,000 per person to nearly 400 celebrity "influencers" with huge social media followings to publish promotional photos and videos in an attempt to generate greater ticket sales.

19.     Upon information and belief, Defendants sold thousands of tickets and

packages to the Fyre Festival.

20. However, Defendants only began actual planning for the Fyre Festival mere weeks before it was scheduled to take place. But by that time, Defendants were woefully unprepared. Defendants lacked fundamental supplies such as toilets and running water.

21. Nevertheless, Defendants continued to send emails, reminders, and promotions to Plaintiff suggesting that the Fyre Festival would go on as planned, and as promised. Even as late as four days before the Fyre Festival was slated to begin, Defendants sent emails reminding Plaintiff to "top off" her "FyreBand" – a digitally-enabled wristband "loaded" with monetary credit to be used at the Festival in lieu of cash.

22. Yet, Defendants knew – or should have known – long before those final days that the Fyre Festival was a logistical impossibility. Vendors quoted "disaster" pricing in order to expedite basic necessities to the event site. Vendors informed Defendants that no amount of money would get all of the most basic accommodations put in place in time for the guests' arrivals. Defendants had no equipment – and no infrastructure to even support the equipment – not even a loading dock to receive the equipment Defendants attempted to import.

23. Plaintiff purchased a ticket from Defendants for $1,940, deposited $600 on the cash-less wristband, and further incurred $930 in travel expenses, including flights to and from Miami and hotel stays in Miami before and after the Fyre Festival. Plaintiff incurred additional costs in additional airfare back to New York and hotel costs after Fyre Festival was cancelled.

24. On April 27, Plaintiff and over a thousand other Fyre Festival ticket

holders made their way to Miami to board the private VIP Boeing jet headed for the secluded island. But instead of experiencing "the cultural event of the decades" upon landing, Plaintiff and over a thousand other visitors to Exuma "were met with total disorganization and chaos," according to a statement released by the Bahamas Ministry of Tourism.

25. Instead of fully furnished, luxury accommodations on the beach, Plaintiff found rows of FEMA-style tents that would serve to barely protect them from the wind and rain. The tents were all arranged around a huge villa filled with what appeared to be wealthy white men, possibly organizers of the Festival, who would not help Plaintiff or any of the other scared and confused Fyre Festival attendees.

26. Instead of catamaran parties and A-level music performances, Plaintiff found unmanned and only partially constructed concierge "desks," an absent medical staff, and no direction from Defendants.

27. Without any security or organization at the event, Plaintiff and attendees began to panic. People struggled to secure their belongings after the event turned into a free-for-all – luggage was getting stolen and patrons were seen dragging mattresses across the sand from tent to tent.

28. On April 28, Defendants "cancelled" the Fyre Festival, notwithstanding the fact that Plaintiff and more than a thousand other patrons had already arrived at the venue. Once the event was officially cancelled, the festival-goers were stranded. Their cashless FyreBands were useless in the local, cash-based economy, leaving Plaintiff and most other attendees at the mercy of Defendants to distribute their scant resources and organize an escape route.

29. Plaintiff and countless other event attendees waited for hours to be evacuated from the island, and many were locked inside the airport itself with no air conditioning – causing several patrons to vomit, and causing at least one patron to lose consciousness.

30. Defendants claimed they were forced to cancel the event due to inclement weather. Yet, Defendants knew for months that their Fyre Festival was ill equipped and posed a serious danger to anyone in attendance. Indeed, contractors were refusing to work for lack of payment from Defendants, the beach was practically barren, and news outlets had already begun calling the entire venture a "scam."

31. Defendants disregarded Bahamian customs rules and regulations – ultimately causing the Bahamian government to lock down the event facility due to Defendants' failure to pay customs duty taxes.

32. McFarland and Atkins, aware that the Fyre Festival could not go forward, reached out to performers and celebrities well before April 28, advising them not to attend – thereby acknowledging their lack of preparation, and the dangerous situation they had created.

33. Defendants did not extend this warning, however, to Plaintiff or the horde of other attendees who arrived at Exuma and were met with a chaotic and unsafe encampment.

### V.     CLASS ACTION ALLEGATIONS

42. <u>Class Definition</u>. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this case on behalf of the classes defined below. Plaintiff reserves the right to amend these definitions:

7

Nationwide Class:

**All persons in the United States who purchased a ticket to the Fyre Festival.**

New York Subclass:

**All persons in New York who purchased a ticket to the Fyre Festival.**

These classes are collectively referred to herein as the "Class."

43. <u>Numerosity</u>. On information and belief, the class is so numerous that joinder of all members is impracticable. On information and belief, the class has more than one thousand (1000) members who purchased tickets to attend and/or did attend the Fyre Festival. Moreover, the disposition of the claims of the class in a single action will provide substantial benefits to all parties and the Court.

44. <u>Commonality</u>. There are numerous questions of law and fact common to Plaintiff and other class members. These common questions of law and fact include, but are not limited to, the following:

    a.    Whether Defendants made false representations to Plaintiff regarding the Fyre Festival;

    b.    Whether Defendants knew their representations to Plaintiff were false or recklessly disregarded the truth;

    c.    Whether Defendants negligently misrepresented to Plaintiff material facts pertaining to the Fyre Festival; and

    d.    Whether Defendants breached an implied or express contractual obligation to Plaintiff.

45. <u>Typicality</u>. Plaintiff's claims are typical of the claims of the class. Plaintiff suffered the same injury as class members—*i.e.*, Plaintiff purchased tickets and

ticket packages to the Fyre Festival and sustained damages arising out of Defendants' wrongful and fraudulent conduct as alleged herein.

46. <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions.  Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the class and have the financial resources to do so.  Neither Plaintiff nor her counsel has interests that are contrary to or that conflict with those of the proposed class.

47. <u>Predominance</u>.  Defendant has engaged in a common course of conduct toward Plaintiff and class members.  The common issues arising from this conduct that affect Plaintiff and class members predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

48. <u>Superiority</u>.  A class action is the superior method for the fair and efficient adjudication of this controversy.  In this regard, the class members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against large corporations such as Defendant.  It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits.  Individualized litigation presents a potential for inconsistent or contradictory judgments, and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case.  By contrast, the class action procedure here will have no management difficulties.  Defendant's records and the records available publicly will easily identify the class

members. The same common documents and testimony will be used to prove Plaintiff's claims as well as the claims of class members. Finally, proceeding as a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION

### Intentional Misrepresentation

### (On Behalf of the Nationwide Class)

49. Plaintiff realleges and incorporates by reference all preceding factual allegations.

50. Defendants made numerous express representations and statements pertaining to the Fyre Festival.

51. Defendants represented that the Fyre Festival would include: travel on a "VIP configured Boeing 737," a "globally rooted" and "curated" dining experience, a "mixology team" running multiple bars continuously throughout the day, cabana packages, jet skiing, snorkeling, catamaran parties, lavish and fully furnished sleeping accommodations, and musical performances by top-level musical talent.

52. Defendants' statements were false, and as organizers and sponsors of the event, Defendants knew that their representations were false or Defendants made false representations with reckless disregard for the truth.

53. Defendants made false statements about the Fyre Festival to generate revenue in the form of ticket and package purchases.

54. Plaintiff purchased her ticket and packages based on Defendants' false and misleading statements.

55. As a result of her reliance, Plaintiff lost thousands of dollars on travel and accommodations to the Fyre Festival. Plaintiff further incurred expenses on emergency travel, and Plaintiff experienced significant pain and suffering while stranded on an inadequately equipped island in a foreign country.

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation

### (On Behalf of the Nationwide Class)

56. Plaintiff realleges and incorporates by reference all preceding factual allegations.

57. Defendants made numerous express representations and statements pertaining to the Fyre Festival.

58. Defendants represented that the Fyre Festival would include: travel on a "VIP configured Boeing 737," a "globally rooted" and "curated" dining experience, a "mixology team" running multiple bars continuously throughout the day, cabana packages, jet skiing, snorkeling, catamaran parties, lavish and fully furnished sleeping accommodations, and musical performances by top-level musical talent.

59. Defendants' statements were false, and as organizers and sponsors of the event, Defendants had no reasonable grounds for believing their representations were true when Defendants made them.

60. Defendants made false statements about the Fyre Festival to generate revenue in the form of ticket and package purchases.

61. Plaintiff purchased her ticket and packages based on Defendants' false and misleading statements.

62.     As a result of her reliance, Plaintiff lost thousands of dollars on travel and accommodations to the Fyre Festival. Plaintiff further incurred expenses on emergency travel, and Plaintiff experienced significant pain and suffering while stranded on an inadequately equipped island in a foreign country.

## THIRD CAUSE OF ACTION

### Breach of Contract

### (On Behalf of the Nationwide Class)

63.     Plaintiff realleges and incorporates by reference all preceding factual allegations.

64.     Plaintiff entered into a contract with Defendants to experience a luxury and elite concert event in exchange for money.  Plaintiff provided money as consideration in exchange for Defendants' promise to provide five-star accommodations and cuisine, VIP experiences, premium upgrades, and live musical performances.

65.     Defendants breached their contract with Plaintiff by failing to provide accommodations, experiences, and/or musical performances consistent with Defendants' promise.

66.     Plaintiff lost thousands of dollars on travel and accommodations to the Fyre Festival.  Plaintiff further incurred expenses on emergency travel home from the event.

## FOURTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

### (On Behalf of the Nationwide Class)

67. Plaintiff realleges and incorporates by reference all preceding factual allegations.

68. Plaintiff entered into a contract with Defendants to experience a luxury and elite concert event in exchange for money. Plaintiff provided money as consideration in exchange for Defendants' promise to provide five-star accommodations and cuisine, VIP experiences, premium upgrades, and live musical performances.

69. Defendants engaged in disruptive behavior that interfered with Plaintiff's right to receive the benefits of her contract.

70. Plaintiff lost thousands of dollars on travel and accommodations to the Fyre Festival. Plaintiff further incurred expenses on emergency travel home from the event.

## FIFTH CAUSE OF ACTION

### Violation of the New York General Business Law § 349

### (On Behalf of the New York Subclass)

71. Plaintiff realleges and incorporates by reference all preceding factual allegations.

72. Defendants engaged in false and misleading marketing regarding the Fyre Festival.

73. As fully alleged above, by advertising, marketing, distributing and/or

selling tickets to the Fyre Festival to Plaintiff, Defendants engaged in deceptive acts and practices.

74. In this regard, Defendants have violated and continue to violate § 349 of the New York General Business Law (GBL), which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendants' violation of GBL § 349 as described above, Plaintiff and the other members of a New York Subclass have suffered damages in an amount to be determined at trial.

75. Plaintiff seeks recovery of actual damages, treble damages for willfully and knowingly violating GBL § 349, and an award of attorneys' fees and costs.

## SIXTH CAUSE OF ACTION

**Violation of the New York General Business Law § 350**

**(On Behalf of the New York Subclass)**

76. Plaintiff realleges and incorporates by reference all preceding factual allegations.

77. Defendants engaged in false advertising regarding the Fyre Festival.

78. As fully alleged above, by advertising, marketing, distributing and/or selling tickets to the Fyre Festival to Plaintiff, Defendants engaged in false advertising.

79. In this regard, Defendants have violated and continue to violate GBL § 350, which makes false advertising unlawful. As a direct and proximate result of Defendants' violation of GBL § 350 as described above, Plaintiff and the other members of a New York Subclass have suffered damages in an amount to be determined at trial.

80. Plaintiff seeks recovery of actual damages, treble damages for willfully and knowingly violating GBL § 350, and an award of attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all other individuals similarly situated, requests the following relief:

A. Certification of the proposed class;

B. Appointment of Plaintiff as representative of the class;

C. Appointment of the undersigned counsel as counsel for the class;

G. An order requiring Defendants to disgorge and make restitution of all monies Defendants acquired by means of the unlawful practices set forth herein;

H. An award to Plaintiff and the class of damages, as allowed by law;

I. An award to Plaintiff and the class of attorneys' fees and costs, as allowed by law and/or equity;

J. Leave to amend this Complaint to conform to the evidence presented at trial; and

K. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## **DEMAND FOR JURY**

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated: May 11, 2017              **AHDOOT & WOLFSON, PC**

By:   /s/ *Tina Wolfson*
       Tina Wolfson
       twolfson@ahdootwolfson.com
       45 Main Street, Suite 230
       Brooklyn, NY 11201

15

Tel: (917) 336-0171
Fax: (917) 336-0177

*Counsel for Plaintiff and the putative class*